UNITED STATES of America

v.

Sylvio GRASSO.

Crim. No. H–75–52.

United States District Court,
D. Connecticut.

May 13, 1976.

Peter Dorsey, U. S. Atty., New Haven, Conn., Michael Hartmere, Asst. U. S. Atty., Hartford, Conn., David H. Beitz, Dept. of Justice, Washington, D. C., for plaintiff.

Donald Cardwell, Hartford, Conn., Henry Rothblatt, New York City, Frank Berall, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

ZAMPANO, District Judge.

The issue presented by defendant's motion to dismiss is whether the Double Jeopardy Clause of the Fifth Amendment will be violated by the retrial of the defendant, Sylvio J. Grasso, after his original trial ended in a mistrial declared by the trial judge, *sua sponte.*

### I.

The moving papers indicate that on April 16, 1975, the defendant was indicted on three counts of income tax evasion for the years 1969, 1970 and 1971, in violation of 26 U.S.C. § 7201. Since the government revealed its intention to proceed on a net worth theory of prosecution, the defendant moved for and received broad pretrial discovery. Trial commenced on November 4, 1975, before the Honorable T. Emmet Clarie, Chief Judge, and a jury duly empanelled and sworn. During the next eight trial days, the government called over 40 witnesses to testify on its case-in-chief; the defendant presented ten witnesses, including himself; the government called three witnesses in rebuttal; and, over 300 documents were admitted as exhibits. In addition, the parties filed extensive requests for jury instructions. On November 26, 1975, as the government was preparing to call its final rebuttal witnesses, Judge Clarie aborted the trial on his own motion after a two-day hearing.

The circumstances leading to the mistrial were as follows. During the course of the government's direct case, one Daniel Harris was called to testify. Harris had multiple felony convictions in his background and was presently serving a term of imprisonment of 8–30 years imposed in 1971 for the sale of heroin. However, he had had favorable consideration from the Board of Parole and was due to be released from prison in December, 1975. Harris testified at length that he and the defendant had engaged in numerous transactions involving the purchase and sale of heroin in the year 1970. The obvious purpose of this evidence was to establish an illegal source for the defendant's alleged unreported income in the calendar year 1970. Harris' testimony extended over a period of a day and a half and consumed over 120 pages of transcript.

Several days after he testified, Harris contacted Henry Rothblatt, the defendant's attorney, and requested an interview at the local jail. Rothblatt visited Harris and recorded a full recantation of Harris' trial testimony. Among other things, Harris stated that his false testimony was influenced by coercion and threats made by government prosecutors and the agents in charge of the tax case. He asserted that when he informed these officials prior to trial that he did not wish to appear, they responded that unless he changed his mind his parole would be revoked, he would have to serve the full 30 years of his sentence, and he would also be indicted on a perjury charge because of his grand jury appearance in the instant case. As a consequence, he claimed he was forced to testify falsely against the defendant.

Rothblatt immediately relayed Harris' disclosures to Judge Clarie and filed a motion to dismiss based on prosecutorial misconduct, citing as authority *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland,* 373

U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Hearings were held on November 21 and 25, at. which ten witnesses were heard outside the presence of the jury. However, Harris refused to testify, relying on the protections afforded by the Fifth Amendment.

On November 26, Judge Clarie ruled in relevant part as follows.

The Court: The Court has, as counsel may well imagine, given considerable thought to this problem that has arisen. I never had the question arise in this form during a trial before.

But the Court is of the opinion that because of the perjury issue injected into the trial by the testimony of Daniel Harris, that the defendant Grasso can not get a fair and impartial trial under the present circumstances.

If the issue went to the jury it would not be whether or not he failed to pay his income taxes; the issue would be of selling narcotics, which is in and of itself a kind of abhorrent business to most every one of us. The issue would become whether or not he was selling narcotics, and whether or not this man, Daniel Harris, could be believed.

To do that we'd have to go 'way back to the statement to the three Hartford policemen and the County Detective in '71, and get the facts as to how the story originated, with the documents which are in evidence. And we'd have to begin to review the testimony before the grand jury that Mr. Buckley educed when he was prosecutor, or assistant prosecutor.

We'd have to review the tape, as has been filed in evidence by counsel, which he procured at the jail. We'd have to review the statement of the I.R.S. witnesses who went over and received from him what is claimed to be an apparent contradiction of the tape.

And the issue of Mr. Grasso's income tax evasion would be well lost in the question of whether or not Daniel Harris committed perjury. That would be the nub of the case, rather than the question of the defendant's failure to pay his income taxes.

For this reason the Court is of the opinion that the motion to dismiss would be denied but that a mistrial should be ordered, because there is a manifest necessity for declaring a mistrial. Otherwise, the ends of justice, public justice, would be defeated.

And that is what the Court is going to do. The Court is of the opinion that to permit the trial to go forward under the present circumstances would be an injustice to Mr. Grasso.

The Court can not find that there was improper conduct on the part of the prosecutor, or as far as the Government agents or investigators are concerned. The Court certainly is of the opinion that this man, Daniel Harris, couldn't be believed if he put his hand on two Bibles—I wouldn't believe him under any circumstances, after hearing what has been educed here in this trial. I don't think he is believable.

But to say that the Government knew he was not truthful and put him on notwithstanding that, I think would be an unfair accusation.

\* \* \* \* \* \*

But I think it would be unfair to Mr. Grasso to let that become a focal point of whether this case should be tried and go forward. Because if he were found guilty it would always be a conclusion of his, certainly, and possibly of others, that that was the reason for the jury's conclusion of guilt, because of the contamination of the alleged sale of narcotics, based upon perjurious testimony of Daniel Harris.

The Court is firmly of the opinion that a mistrial should be granted. And the Government can decide whether or not at any future time they wish to proceed further with the prosecution. At that time the issue of double jeopardy could be argued, and can move in proper form at that time.

That is the ruling of the Court. (Tr., November 26, 1975, pp. 12–14).

As soon as the judgment of the court was announced, Assistant United State's Attorney Hartmere responded:

Your Honor, for the record, the Government strongly opposes the Court's ruling. (Id., at 14).

In addition, Attorney Rothblatt took exception to the court's decision and unsuccessfully attempted to renew his request for a judgment of acquittal.

In discharging the jury, Judge Clarie further amplified his reasons for declaring a mistrial:

Now, because this, because of this perjury issue being injected into this trial by the testimony of the witness, Daniel Harris, the Court is of the opinion that a fair and impartial trial can not be assured for the defendant.

For this reason the jury is discharged, is discharged from giving a verdict in this case, because there is a manifest necessity for declaring a mistrial. Otherwise, the ends of justice would be defeated. The factual issues are income tax evasion—what the trial is all about, and they have been indelibly stained with the perjury of Daniel Harris concerning the defendant's alleged dealings in narcotics.

His statement infected and contaminated the trial so that the defendant could not get a fair trial on the allegations of income tax evasion with which he'd been charged.

&ast; &ast; &ast; &ast; &ast; &ast;

Now, I am not permitted to determine under the circumstances where the truth lies, but certainly under the circumstances I would not believe Daniel Harris.

In a case that starts out as an income tax evasion case it is necessary of course for the Government to demonstrate and prove that there were possible other sources of income, in addition to showing that he failed to report them. And it concerned all this extra money. It is incumbent upon the Government to demonstrate and show that there are possible sources of income.

Now, had Daniel Harris testified that the defendant was in the newspaper business, on the side, or that he was selling peanuts on the side, and he lied about it, it wouldn't be nearly as damaging as to say that he sold bundles of heroin. Once you get into that area of heroin and narcotics, it is the opinion of the Court that the question of truth or falsity of this Daniel Harris, a crucial witness, contaminates the trial; it leaves a stain.

Because the jury—many people today, anyone connected with narcotics, it is the most terrible thing that could happen to them, because everybody is so distressed about narcotics.

But here the man accuses the defendant of being involved in narcotics, in an income tax trial. And it seems to me that that has so contaminated the issues—particularly with the give and take of truth or falsity here—that under the circumstances a fair trial could not be secured for the defendant.

And above everything else it is the Court's duty—sometimes it is unpleasant after sitting for eight days, as you have— and I have listened for a couple of days to other testimony in the case—with all the back up of business we have, to have to declare a mistrial.

But justice comes first. And if that is what is necessary, it is the duty of the Court to declare a mistrial.

It is then up to the Government to decide whether they want to try the case over again, before another jury, and it is the privilege of the defendant to argue at that time the principle of double jeopardy. And at that time that issue will be resolved at any future trial that might be had.

So I briefly, summarily, have given you this background in a nutshell. It is an unusual happening during the course of a trial, but those things will and can happen.

The paramount thing is to assure every defendant who comes into this court a fair trial. That is the duty of the Court,

and upon that basis the Court will follow that principle. (Tr., November 25, 1975, pp. 15–16, 17–19).

When the government set his case down for a retrial, the defendant promptly filed the instant motion to dismiss which Judge Clarie assigned to this Court for disposition.

## II.

■ It is settled law that, in the absence of the defendant's request or consent, there can be a new trial after a mistrial has been declared if "there is a manifest necessity for the [mistrial] or the ends of public justice would otherwise be defeated." *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824). See also *United States v. Jorn,* 400 U.S. 470, 481, 91 S.Ct. 547, 555, 27 L.Ed.2d 543, 554 (1971); *Wade v. Hunter,* 336 U.S. 684, 691, 69 S.Ct. 834, 838, 93 L.Ed. 974, 979 (1949); *Simmons v. United States,* 142 U.S. 148, 154, 12 S.Ct. 171, 172, 35 L.Ed. 968, 971 (1891). The manifest necessity test of *Perez* obviously contemplates a sound and sensitive exercise of discretion by the trial judge which must be tested on a case by case basis. *United States v. Dinitz,* —— U.S. ——, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425, 429 (1973); *United States v. Gentile,* 525 F.2d 252, 255–256 (2 Cir. 1975).

■ In deciding whether to declare a mistrial *sua sponte,* a trial judge must carefully weigh the defendant's valued right to have his trial completed by a particular jury, *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, 102 (1963), with society's interest in fair trials designed to insure just judgments. *United States v. Jorn,* supra, 400 U. S. at 480, 91 S.Ct. at 554, 27 L.Ed.2d at 553. Various factors may be placed on the scale. A motion for a mistrial made by the defendant or with his consent may remove the barrier to reprosecution, even in the presence of prosecutorial or judicial error. *United States v. Jorn,* supra at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556; see also *United States v. Dinitz,* supra; *United States v. Gentile,* supra. Another trial is permissible if the judge, in declaring a mistrial *sua sponte,* was acting "in the sole interest of the defendant," *United States v. Gori,* 367 U.S. 364, 369, 81 S.Ct. 1523, 1527, 6 L.Ed.2d 901, 905 (1961), or if "a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious error in the trial." *Illinois v. Somerville,* supra 410 U.S. at 464, 93 S.Ct. at 1070, 35 L.Ed.2d at 431. On the other hand, jeopardy attaches if the defendant "would be harassed by successive, oppressive prosecutions," or if the judge "exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused." *Gori v. United States,* supra 367 U.S. at 369, 81 S.Ct. at 1526, 6 L.Ed.2d at 905; see also *United States v. Jorn,* supra 400 U.S. at 486, 91 S.Ct. at 557, 27 L.Ed.2d at 557.

## III.

■ Applying these principles to the facts in the instant case, the Court, for several reasons, is compelled to conclude that a retrial would violate the defendant's constitutional right not to be twice put in jeopardy.

First, contrary to the government's suggestion, the defendant did not request a mistrial. The presentation of the motion to dismiss, the arguments of counsel pursuant thereto, the ruling of the trial judge, and the reaction of the attorneys immediately following the announcement of the mistrial, disclose conclusively that the only motion offered or intended to be offered was the motion to dismiss. There was no mention of a request for a mistrial as an acceptable alternative. It is also significant to note that Judge Clarie stated on two occasions during his oral ruling that the "principle of double jeopardy" might be a relevant consideration in the event the government decided "to proceed further with the prosecution" before another jury. The references to a possible jeopardy defense at a retrial

clearly indicate Judge Clarie was granting a mistrial *sua sponte* and not in response to the defendant's request. See *United States v. Dinitz,* supra; *United States v. Jorn,* supra.

■ Second, the Court must reject the government's contention that there was an implied consent to the mistrial because the defendant's attorney engaged in a course of conduct calculated to abort the trial. Compare *United States v. Gentile,* supra. While it is true that the dismissal petition triggered the *sua sponte* declaration of a mistrial, it is plain from the record that there was neither impropriety or misconduct on the part of defense counsel during the events and proceedings surrounding the mistrial nor was the motion to dismiss a frivolous petition. As an officer of the court and lawyer for the defendant, Attorney Rothblatt had the affirmative duty to notify the trial judge that a witness had recanted his sworn testimony. Probable perjurious testimony must, of course, be immediately reported to the presiding judge in the interests of justice and to preserve the integrity of the judicial process.

Recantation of a witness' testimony at trial is not a rare occurrence. See, e. g., *United States ex rel. Sostre v. Festa,* 513 F.2d 1313 (2 Cir. 1975); *United States ex rel. Rice v. Vincent,* 491 F.2d 1326 (2 Cir. 1974); *United States v. Silverman,* 430 F.2d 106 (2 Cir. 1970); *United States v. Polisi,* 416 F.2d 573 (2 Cir. 1969); *United States v. Mitchell,* 29 F.R.D. 157 (D.N.J.1962). Generally, false testimony is uncovered after trial and fathers an action for relief under Rule 33, Fed.R.Crim.P., or pursuant to 28 U.S.C. § 2255, or by way of a writ of habeas corpus.

When alleged perjury is revealed after a witness has testified but while the trial is still in progress, as in the case at bar, the trial judge has several options available to insure that the jury receives the impeaching evidence for its consideration in appraising the witness' credibility. These include the recall of the witness for further cross-examination and the introduction, if necessary, of the affidavit, tape-recording, or other document setting forth the recantation. Rules 607, 801(d)(1), 804(a)(2) and 804(b)(1), Federal Rules of Evidence (1975); cf. *United States v. Pfingst,* 490 F.2d 262 (2 Cir. 1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); *United States v. Klein,* 488 F.2d 481 (2 Cir. 1973), cert. denied, 419 U.S. 1091, 95 S.Ct. 683, 42 L.Ed.2d 684 (1974); *United States v. Blackwood,* 456 F.2d 526 (2 Cir.), cert. denied, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972); *United States v. DeSisto,* 329 F.2d 929 (2 Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

■ Thus, in the present case, if the incident involved only a recantation, without more, it must be assumed that, depending on the circumstances, Harris would have been recalled for further examination or the tape-recording would have been introduced into evidence. Cf. *United States v. Jorn,* supra 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556. However, in addition to the repudiation of his incriminating testimony, Harris relayed to Rothblatt certain facts which, if true, disclosed serious governmental misconduct sufficient to justify a dismissal. Cf. *United States v. Gerry,* 515 F.2d 130, 144 (2 Cir. 1975); *United States v. McCord,* 166 U.S.App.D.C. 1, 509 F.2d 334, 349 (1974), cert. denied, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). Rothblatt's disclosures to Judge Clarie and the defendant's motion to dismiss, therefore, were consistent with the obligations of trial counsel and the procedural due process rights afforded an accused at trial.

Third, the Court is constrained to overrule the government's argument that under the standards enunciated in *Gori,* 367 U.S. at 369, 81 S.Ct. at 1527, 6 L.Ed.2d at 905, reprosecution is not barred because the mistrial was "obviously in the sole interest of the defendant." Judge Clarie noted after the hearing on the motion to dismiss that Harris was a "crucial" government witness (Tr., November 26, 1975, p. 12) who "couldn't be believed if he put his hand on two Bibles" (Id.) and whose credibility "con-

taminates the trial" (Id. at 18). It necessarily follows, therefore, that if the trial had been permitted to continue and the recantation evidence had been presented to the jury, it was more than likely the jury would have completely discounted Harris' testimony, as indeed Judge Clarie did, and acquitted the defendant, at least with respect to the 1970 tax year. There is little question that the recantation provided unexpected but welcomed evidentiary weaponry in defense counsel's arsenal to wage a strong assault on the government's case by renewed cross-examination and in summation. Few tools are more valuable to the skillful and experienced trial advocate to gain an acquittal in a criminal case than the sword of impeachment in combination with the shield of the doctrine of reasonable doubt. This is especially true in the context of a complex net worth tax prosecution wherein likely sources of unreported income are vital to a conviction. The mistrial here prevented defense counsel from discrediting a key government witness on this essential element of the crime and deprived the defendant of "the right to seek a favorable verdict from the first jury." *United States v. Glover,* 506 F.2d 291, 298 (2 Cir. 1974). As stated by Justice Harlan in *Jorn* :

> . . . in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate. 400 U.S. at 486, 91 S.Ct. at 558, 27 L.Ed.2d at 557.

In addition, although the government objected to the mistrial, reprosecution would give it a solid tactical advantage. With commendable candor at the oral argument before this Court, government counsel admitted Harris would not be a witness on retrial. Thus the government would have ample time to retrench, to reconstruct its evidence, and to present its case against the defendant for the year 1970 without the tainted Harris testimony; or, it might proceed to seek convictions solely for the years 1969 and 1971. Cf. *United States v. Kin Ping Cheung,* 485 F.2d 689, 691–692 (5 Cir. 1973). While certainly not Judge Clarie's intention, it is evident that the mistrial served "as a post-jeopardy continuance to allow prosecution an opportunity to strengthen its case." *Somerville,* 410 U.S. at 469, 93 S.Ct. at 1073, 35 L.Ed.2d at 434.

Fourth, the defendant has submitted evidence, not controverted by the government, that a retrial would be oppressive and would hamper the right to counsel of his own choice. Cf. *Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957). A retrial would constitute the fourth major criminal trial instituted against this defendant in recent years. In short, he is unable to retain private counsel for the next trial; he is substantially indebted to Attorney Rothblatt for services rendered to date; and, he has strained his financial resources to the limit.

Fifth, the trial was aborted after it had proceeded at length with a substantial amount of evidence introduced—far beyond the situation in *Downum* and *Somerville.* Cf. *United States v. Glover,* supra at 298. A conscientious preparation by court-appointed counsel at this stage of the proceedings would require extraordinary intrusions on the lawyer's time, exhaustive research and inspection of records, transcripts and exhibits, and would inevitably result in an inordinate delay affecting the defendant's right to a speedy trial.

Accordingly, the defendant's motion to dismiss is granted.