UNITED STATES of America,
Plaintiff-Appellant,

v.

Sylvio J. GRASSO, Defendant-Appellee.

No. 276, Docket 76–1284.

United States Court of Appeals,
Second Circuit.

Argued Oct. 18, 1976.

Decided March 9, 1977.

On Rehearing En Banc June 21, 1977.

### ORDER

A poll of the judges in regular active service having been taken, and there being no majority in favor of rehearing en banc,

Upon consideration, it is determined that rehearing en banc shall not be ordered.

TIMBERS, Circuit Judge, dissenting from denial of reconsideration en banc:

I respectfully dissent from the denial of rehearing en banc, two of the active judges of this Court having voted to grant such rehearing.

The reasons for my disagreement with the panel majority are set forth in my panel dissent. 552 F.2d at 54. This opinion sets forth more particularly the reasons I believe this case warrants en banc reconsideration by the full Court.

In the vitally critical area of the correct procedure to be followed by the trial judge in declaring a mistrial as a predicate to a subsequent double jeopardy dismissal, the majority's treatment in the instant case of the question of manifest necessity and discretion of the trial judge in the declaration of a mistrial surely is in direct conflict with—if indeed it does not effectively overrule—our holding of last term in *United States v. Gentile*, 525 F.2d 252 (2 Cir. 1975), *cert. denied*, 425 U.S. 903 (1976). The panel majority here, in reaching the conclusion that Judge Clarie's sua sponte declaration of a mistrial was an abuse of discretion, has imposed a standard of unprecedented rigidity which is in sharp conflict with *Gentile* and the other controlling cases referred to below. This is so for at least two reasons.

First, the panel majority here holds that "before a trial judge declares a mistrial, he must make explicit findings, preferably after a hearing, that there are no reasonable alternatives to mistrial." 552 F.2d at 52. But *United States v. Jorn*, 400 U.S. 470 (1971), from which the majority has drawn this "necessary procedural corollary", laid down no such per se requirement of findings and a hearing. Nor is there any basis for extrapolating such a requirement from *Jorn*. The emphasis in *Jorn* on the quality of the trial judge's decision-making cannot be so easily severed from the particular facts of that case. The sua sponte declaration of a mistrial in *Jorn* was an "erratic" decision. See *Illinois v. Somerville*, 410 U.S. 458, 469 (1973). There is a significant

distinction between the depth of consideration given to the mistrial declaration by the trial judge in *Jorn* and that given by both the district judge in *Gentile* and Judge Clarie in the instant case.

In our holding in *Gentile*, we did not construe *Jorn* to require findings and a hearing. 525 F.2d at 257–58. Judge Friendly's carefully considered *Gentile* opinion was correct in declining to do so. If the alternatives are apparent on appeal, burdening the trial judge with findings is unnecessary. Moreover, since the majority's newly enunciated hearings and findings rule is unaccompanied by a requirement that the defendant state his objections to a mistrial, it most assuredly will play into the hands of defense counsel intent upon manufacturing grounds for dismissal. The panel majority's new rule, if permitted to stand, will reduce double jeopardy to just plain quibbling over procedural niceties while losing sight of the trial court's "broad discretion" to terminate a trial in the "ends of public justice". *Illinois v. Somerville, supra*, 410 U.S. at 458, 462–63.

Second, the majority's retrospective search for "reasonable alternatives" imposes a restriction on the trial judge's discretion squarely in conflict with *Gentile*. *Gentile*, as well as *Gori v. United States*, 367 U.S. 364 (1961), were much stronger cases for double jeopardy dismissal than the instant case. The district judge's remarks in *Gentile* regarding other alternatives were far less cogent than were Judge Clarie's here. Furthermore, we noted in *Gentile* that the prejudicial defect of the prosecutor's remark almost certainly could have been corrected by an instruction, whereas in this case Judge Clarie "found" in considerable detail that the infection from Harris' testimony was incurable—to which attorney Rothblatt "agreed". Surely the defendant's agreement that a fair first trial no longer is possible and his refusal to cooperate in suggesting alternatives bolsters the trial

court's discretion in declaring a mistrial and lessens the burden of exploring alternatives.

The majority brushes aside Judge Clarie's finding of fact that nothing could remedy the situation. But, even if alternative steps could have been taken without incurring reversal, that does not mean, as the panel majority holds, that double jeopardy automatically attaches. As we recognized in *Gentile*, the character of the discretion exercised in the mistrial declaration is such that it may be "immaterial that, in the exercise of appellate hindsight, we may not regard the prejudice as so great or so incurable by less drastic means." 525 F.2d at 258.

The panel majority in the instant case explicitly overrules *Gentile*, 552 F.2d at 52 n. 2, in discarding *Gentile's* accreditation of the *Gori* rule in light of *Jorn* and *Somerville*. It does so, of course, "with due respect to the *Gentile* opinion writer". But the subtle mischief of the panel majority opinion is its disingenuous *implicit* overruling of *Gentile*. It is this that renders en banc reconsideration all the more compelling. In the area of double jeopardy and the sua sponte declaration of a mistrial, our district judges have front-line responsibilities of the first magnitude. They already face a difficult task in formulating applicable principles from the various strands of doctrine presented in *Gori, Jorn* and *Somerville*. Now the sharp conflict between *Grasso* and *Gentile* has compounded that burden with irreconcilable instructions regarding what the Constitution demands.

Finally, several of my colleagues once again are chanting the familiar refrain, "Let the Supreme Court decide the issue, rather than our Court sitting en banc". I concede that the refrain is accompanied by a somewhat more appealing melody in the instant case, especially since we have been informed that the Solicitor General intends to petition for certiorari in the instant case[1]

---

1. The Solicitor General filed a petition for certiorari in the instant case on May 6, 1977, No. 76–1543, which is still pending.

Other cases in the Supreme Court which involve similar or related double jeopardy questions, either recently decided or pending, include:

and the Supreme Court on April 18, 1977 granted certiorari in a similar double jeopardy case, *Arizona v. Washington,* 546 F.2d 829 (9 Cir. 1976).[2] Nevertheless, while I realize that I am fighting a rear guard action in this matter, I continue to believe that it is our plain duty, Fed.R.App.P. 35(a), to reconsider en banc precisely this type of case where the question presented is one of exceptional importance (I have heard no voice to the contrary here) and such en banc reconsideration is necessary to secure or maintain uniformity in our decisions (*Gentile v. Grasso*). And I shall continue to insist upon our doing so unless or until the Supreme Court tells us that it no longer adheres to what it said in *Western Pacific Railroad Corp. v. Western Pacific Railroad Co.,* 345 U.S. 247 (1953),[3] especially at page 260:

"The *en banc* power, confirmed by § 46(c), is, as we emphasized in the *Textile Mills* case, a necessary and useful power—indeed too useful that we should ever permit a court to ignore the possibilities of its use in cases where its use might be appropriate." (footnote omitted).

> *Arizona v. Washington,* No. 76–1168, decided February 21, 1978, 46 U.S.L.W. 4127 (U.S. Feb. 21, 1978), see note 2 *infra.*
>
> *Lee v. United States,* No. 76–5187, decided June 13, 1977, 45 U.S.L.W. 4661 (U.S. June 13, 1977).
>
> *Sanabria v. United States,* No. 76–1040, certiorari granted, June 27, 1977.
>
> *Crist v. Cline,* No. 76–1200, jurisdiction postponed, April 25, 1977.
>
> *United States v. Scott,* No. 76–1382, petition for certiorari pending.
>
> The instant *Grasso* case most assuredly presents a question of *exceptional importance,* Fed.R.App.P. 35(a); indeed, in the opinion of some of my colleagues, it is just *too important* for en banc reconsideration. See note 3 *infra.*

**2.** On February 21, 1978, the Supreme Court reversed the Ninth Circuit's decision which had affirmed the district court's grant of a state prisoner's petition for a writ of habeas corpus on double jeopardy grounds following a mistrial in an Arizona trial court. The Supreme Court held, inter alia, that, when the basis for the trial judge's mistrial order is adequately disclosed by the record, the absence of an explicit finding of "manifest necessity" for the mistrial, or an explanation of his reasons for the mistrial, or an express statement that he had considered alternative solutions, does not render the trial judge's ruling constitutionally defective. *Arizona v. Washington,* 46 U.S.L.W. 4127, 4132 (U.S. Feb. 21, 1978).

**3.** See also Judge Oakes' dissent from the denial of rehearing en banc in *Eisen v. Carlisle &*

*Jacquelin,* 479 F.2d 1005, 1025, 1026 (2 Cir. 1973), *aff'd,* 417 U.S. 156 (1974):

> "Thus it seems to me that the en banc procedure, or some viable substitute for it, is essential to ensure cohesion, a degree of uniformity and the promotion of appellate justice, in the Court of Appeals. The en banc power has received the imprimatur of an 8–1 Supreme Court, in a case that is still law, as 'a necessary and useful power—indeed too [sic] useful that we should ever permit a court to ignore the possibilities of its use in cases where it might be appropriate.' *Western Pacific Railroad Corp. v. Western Pacific Railroad Co.,* 345 U.S. 247, 260, 73 S.Ct. 656, 662, 97 L.Ed. 986 (1953).
>
> \*   \*   \*
>
> "I believe in short that our duty is to hear this case en banc. . . . Perhaps, however, it will serve as a vehicle for a higher authority to tell us whether the admonitions of *Western Pacific Railroad Corp. v. Western Pacific Railroad Co., supra,* relative to the en banc procedure still have any meaning. If they do not, the world may not come to an end, but we will be an interesting court to watch as our eight active and six senior and numerous visiting and district judges go from decision to decision, guided 2 per cent of the time by a grant of certiorari. We will at least be somewhat unpredictable, and this may create enough litigation on the chance that an individual panel may reverse that our calendar will become as unmanageable as the panel opinion felt the instant class action was."