UNITED STATES of America,
Appellant,

v.

Sylvio J. GRASSO, Appellee.

No. 1416, Docket 76–1284.

United States Court of Appeals,
Second Circuit.

April 23, 1979.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

OPINION AND ORDER

OAKES, Circuit Judge:

Judgment in this case, 552 F.2d 46, *rehearing en banc denied,* 568 F.2d 899 (2d Cir. 1977), was vacated by the United States Supreme Court, 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978), and the case remanded in the light of *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), and *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Our panel majority decision upheld Judge Zampano's decision that the Double Jeopardy Clause barred a retrial because there was no "manifest necessity" for the trial judge to declare a mistrial sua sponte. The mistrial was declared when a prosecution witness recanted his testimony after nine trial days had elapsed, fifty-three witnesses had testified, and 300 documents had been introduced, with only one rebuttal witness remaining to be called.[1] We also held that findings should have been made as to available alternatives to mistrial, a

---

1. Judge Timbers dissented on the basis that defense counsel's conduct amounted to implied consent to the declaration of a mistrial. 552 F.2d at 54.

holding similar to that of the Ninth Circuit Court of Appeals in *Arizona v. Washington,* 546 F.2d 829 (1977). When that case was reversed, our holding as to findings was plainly overruled by the Supreme Court, 434 U.S. at 516–17, 98 S.Ct. at 836 ("[n]o matter how desirable such procedural assistance may be, it is not constitutionally mandated . . . [where] [t]he basis for the trial judge's mistrial order is adequately disclosed by the record"). The Court moreover apparently deemphasized the importance of the trial judge's examining alternatives to a mistrial, for which such findings would have been helpful. *Id.* We acknowledge our errors in these respects and are of course bound not to repeat them.[2]

*United States v. Scott, supra,* seems only indirectly relevant. That case, overruling *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), held that where a defendant himself seeks and obtains a midtrial dismissal on grounds "unrelated to factual guilt or innocence," Double Jeopardy does not bar a Government appeal. In our case, Grasso did seek dismissal on the basis of prosecutorial misconduct, a ground, like the prejudicial preindictment delay in *Scott,* not related to "factual guilt or innocence." But Grasso's motion to dismiss was denied. Instead, the trial judge declared a mistrial.[3] Thus, the Supreme Court's reference to *Scott* in its remand order must have been intended to focus our attention on the general double jeopardy

principles expounded there. We shall refer to those principles in our discussion of *Arizona v. Washington, infra.*

*Arizona v. Washington,* however, is obviously directly relevant to this case. There the Court held that there was "manifest necessity" for the declaration of a mistrial where defense counsel had improperly opened to the jury by calling attention to allegedly improper prior prosecutorial misconduct (suppression of evidence) which had caused the state supreme court to remand for the new trial then about to take place. In addition to holding that neither a "manifest necessity" finding nor an explanation of the mistrial ruling was constitutionally required, the Supreme Court emphasized the "special respect" that must be accorded a trial judge's determination of possible jury bias. 434 U.S. at 510, 98 S.Ct. 824. While conceding that, in *Arizona,* "[i]n a strict, literal sense, the mistrial was not 'necessary,' " *id.* at 511, 98 S.Ct. at 833, the Court went on to hold:

> Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.

*Id.*[4] Thus, "necessity" is not to be taken literally; a trial judge's evaluation, at least as to events occurring before the jury, is to be accorded the highest deference.[5]

2. We certainly do not discourage findings; even if they are not required, they do somewhat facilitate review of a trial court decision. 434 U.S. at 517, 98 S.Ct. 824.

3. It might be argued that Grasso should be unable to invoke the Double Jeopardy Clause because, although he asked for a dismissal, he did receive something less, namely, a mistrial. Since *Scott* teaches that the Government could have appealed if Grasso's motion to dismiss had been granted, arguably Double Jeopardy does not bar a reprosecution simply because Grasso received more limited relief. But the holding of *Scott* is clearly limited to appeals of granted dismissals; here the dismissal motion was denied. The reasoning of *Scott* similarly offers no support for this argument. Even if we could somehow interpret a defendant's motion to dismiss as an implied consent to a

mistrial on the same ground, an assumption we doubt, no such interpretation is possible here because the grounds for the mistrial (recantation of prosecution witness) and the motion to dismiss (prosecutorial misconduct) were different. Not even a broad, speculative interpretation of *Scott* treating some mistrials as dismissals is sufficient to remove the Double Jeopardy bar in the present case.

4. 434 U.S. at 511, 98 S.Ct. at 833.

5. Following the discussion quoted at note 4 *supra* the Court continued:

> There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias. He has seen and heard the jurors during their *voir*

This, however, does not end the inquiry, the Court reminds us. *Id.* at 514, 98 S.Ct. 824. We must satisfy ourselves that the trial court exercised "sound discretion." [6]

We turn, then, to the specific trial problems which did trigger the mistrial declaration. Preliminarily we note that Judge Clarie, in denying the motion to dismiss, expressly found that there was no misconduct on the part of Government counsel.

And in granting the motion at retrial to dismiss on double jeopardy grounds, Judge Zampano expressly found that "there was neither impropriety or misconduct on the part of defense counsel during the events and proceedings surrounding the mistrial nor was the motion to dismiss a frivolous petition." [7]

The record [8] discloses that Judge Clarie declared a mistrial because he believed that

*dire* examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be. See *Wade v. Hunter,* 336 U.S. 684, 687, 69 S.Ct. 834, 93 L.Ed. 974.

434 U.S. at 513–14, 98 S.Ct. at 834 (footnote omitted). Thus, it may be that the "highest" deference is to be accorded only in a situation where the grounds for the mistrial are events occurring in the presence of the jury. But, to be extracautionary, we will assume that the standard of "highest deference" is to be observed here.

6. The Supreme Court explained the second step of analysis as follows:

The trial judge, therefore, "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* 400 U.S., at 486, 91 S.Ct. 547, 27 L.Ed.2d 543 (Harlan, J.). In order to ensure that this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised "sound discretion" in declaring a mistrial. 434 U.S. at 514, 98 S.Ct. at 835.

7. 413 F.Supp. 166, 171 (D.Conn. 1976).

8. On November 26, Judge Clarie ruled in relevant part as follows:

The Court: The Court has, as counsel may well imagine, given considerable thought to this problem that has arisen. I never had the question arise in this form during a trial before.

But the Court is of the opinion that because of the perjury issue injected into the trial by the testimony of Daniel Harris, that the defendant Grasso can not get a fair and impartial trial under the present circumstances.

If the issue went to the jury it would not be whether or not he failed to pay his income

taxes; the issue would be of selling narcotics, which is in and of itself a kind of abhorrent business to most every one of us. The issue would become whether or not he was selling narcotics, and whether or not this man, Daniel Harris, could be believed.

And the issue of Mr. Grasso's income tax evasion would be well lost in the question of whether or not Daniel Harris committed perjury. That would be the nub of the case, rather than the question of the defendant's failure to pay his income taxes.

For this reason the Court is of the opinion that the motion to dismiss would be denied but that a mistrial should be ordered, because there is a manifest necessity for declaring a mistrial. Otherwise, the ends of justice, public justice, would be defeated.

And that is what the Court is going to do. The Court is of the opinion that to permit the trial to go forward under the present circumstances would be an injustice to Mr. Grasso.

But I think it would be unfair to Mr. Grasso to let that become a focal point of whether this case should be tried and go forward. Because if he were found guilty it would always be a conclusion of his, certainly, and possibly of others, that that was the reason for the jury's conclusion of guilt, because of the contamination of the alleged sale of narcotics, based upon perjurious testimony of Daniel Harris.

The Court is firmly of the opinion that a mistrial should be granted. And the Government can decide whether or not at any future time they wish to proceed further with the prosecution. At that time the issue of double jeopardy could be argued, and can move in proper form at that time.

In discharging the jury, Judge Clarie further amplified his reasons for declaring a mistrial:

Now, because this, because of this perjury issue being injected into this trial by the testimony of the witness, Daniel Harris, the Court is of the opinion that a fair and impartial trial can not be assured for the defendant.

For this reason the jury is discharged, is discharged from giving a verdict in this case,

allowing the veracity of Harris's testimony to become the focal point of the trial would be unfair to the defendant in several ways. First, the jury's aversion to narcotics might have prejudiced them against the defendant. Second, the sensational nature of Harris's narcotics testimony and recantation, as well as evidence of his retraction of the recantation, might have caused the jury to pay too little attention in their deliberations to the more technical tax evasion issues. Third, the defendant might have been convicted on "perjurious" testimony. Although the trial judge's judgment is certainly not immune from appellate scrutiny under *Arizona,* we hold that Double Jeopardy does not bar reprosecution of the defendant. After reviewing these three considerations, especially the evidence of the retraction of the recantation, and after according the trial judge's decision the "special respect" required by *Arizona,* we conclude that Judge Clarie could reasonably have found manifest necessity for declaring a mistrial.

His first ground, that the jury's aversion to narcotics might have prejudiced them against the defendant, was not in and of itself sufficient to justify a mistrial. The testimony about the defendant's involvement in sales of narcotics was initially admitted in the Government's case as tending to show the existence of a source for the alleged nonreported income, a proper subject of proof. *See United States v. Costanzo,* 581 F.2d 28 (2d Cir. 1978) (in proving tax evasion by net worth method, Government may either negate all possible sources of nontaxable income or prove a likely source of unreported income), *cert. denied,* 439 U.S. 1067, 99 S.Ct. 833, 59 L.Ed.2d 32 (1979). Recantation of such testimony

could prejudice only the Government, not the defendant, since any harm to the latter would have been done when the testimony was first admitted. But evidence of a retraction of the recantation would have cut the other way.[9]

The second ground for the trial judge's mistrial determination was that the sensational nature of Harris's testimony and recantation, together with evidence of his retraction of the recantation, might cause the jury to pay too little attention to the more technical issues of tax evasion. Once again, we would be reluctant to uphold the mistrial declaration on this ground alone. Harris's testimony formed an important part of the Government's original case, to be sure, for it was probative of the source of the unreported income for one taxable year. But although the technical issues and evidence before the jury in this case were not simple (eight days of trial, over 300 exhibits), many cases of far greater complexity are tried before juries, and most have emotional aspects. Although a recantation (with or without a retraction) may have a dramatic effect upon a jury, so may a devastating cross-examination or a strikingly contradictory prior inconsistent statement. If the danger of jury confusion of technical issues were itself so great in this case as to require a mistrial, what would be done with all the much longer and more complex trials routinely tried before juries? *E. g., United States v. Bernstein,* 533 F.2d 775 (2d Cir.), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976); *United States v. Taylor,* 562 F.2d 1345 (2d Cir.), *cert. denied,* 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124 (1977). It should also be noted that this ground, like the previous

---

because there is a manifest necessity for declaring a mistrial. Otherwise, the ends of justice would be defeated. The factual issues are income tax evasion—what the trial is all about, and they have been indelibly stained with the perjury of Daniel Harris concerning the defendant's alleged dealings in narcotics. His statement infected and contaminated the trial so that the defendant could not get a fair trial on the allegations of income tax evasion with which he'd been charged.

413 F.Supp. 168–69.

9. It might be argued that a mistrial declaration would not necessarily prevent prejudice to the defendant, for the same problem might arise in the retrial. But the Government has now represented that it would not use Harris as a witness at a new trial, a course that would eliminate possible prejudice to defendant from his testimony. We consider the Government bound to take this course, even though initial admission of his testimony was proper in the first trial; and our decision is predicated on that representation.

ground, would not be remedied at a new trial unless the Government were to forego presentation of this testimony, a course it was not obliged to pursue at the time of Judge Clarie's ruling.

But the third ground given for the declaration of mistrial, that it was unfair for the defendant to face being convicted on "perjurious" testimony, is the most justifiable. He could be so convicted even if evidence of the recantation were admitted, if the jury believed the evidence as to the witness's retraction. Both kinds of evidence would plainly have been admissible to impeach (or rehabilitate) the witness's prior testimony. Judge Clarie did not give any credence to the witness; in granting the mistrial he said to the jury that "[t]he factual issues . . . have been indelibly stained with the perjury of Daniel Harris . . . ." The probability/possibility that the original testimony was perjured thus has some weight as a ground for a mistrial in light of the evidence that the recantation was retracted, evidence which the jury might have believed.

But when we evaluate the judge's exercise of discretion, *Arizona* requires us to view the judge's three grounds in combination to give them the "special respect" to which they are entitled. The probable per-

jury may have exacerbated the possible prejudice and confusion arising from the narcotics testimony. Although the recantation would have cast doubt upon the defendant's involvement with narcotics and thus would have *attenuated* any prejudice the prior testimony could have caused, the recantation, when coupled with evidence of a retraction, would have drawn even greater attention to the initial testimony. Moreover, if the jury disbelieved the recantation it might have conjectured that improper pressure caused it—with clear prejudice to the defendant. Although the findings on this score leave considerable room for speculation, under *Arizona* we cannot insist upon elucidating findings. We conclude, therefore, that Judge Clarie exercised his discretion soundly.[10]

Some other factors mentioned in *Arizona* militate against our conclusion that Double Jeopardy does not bar reprosecution here, but not so seriously as to undermine it. The Court noted that the defendant in *Arizona* suffered no specific prejudice[11] and that the trial judge did not act precipitously.[12] Here, it is true that the defendant might suffer some prejudice: as Judge Zampano found, "reprosecution would give [the Government] a solid tactical advan-

10. One passage in *Arizona* almost suggests that a judge fails to exercise sound discretion only if his action is irrational or irresponsible. Following the language quoted in footnote 6, *supra*, the Court continued: "Thus, if a trial judge acts irrationally or irresponsibly, cf. *United States v. Jorn, supra;* see *Illinois v. Somerville,* 410 U.S., at 469, 93 S.Ct. 1066, 35 L.Ed.2d 425, his action cannot be condoned. But our review of this record indicates that this was not such a case." 434 U.S. at 514, 98 S.Ct. at 835 (footnote omitted). We certainly would not characterize Judge Clarie's ruling as "irrational" or "irresponsible." However, we do not think that this passage in *Arizona* can be interpreted to make our standard of review so narrow. The term "thus" in the passage indicates that the following clause is not meant to be exhaustive but describes only *one* way that a trial judge might abuse his discretion in declaring a mistrial.

11. 434 U.S. at 516 n.35, 98 S.Ct. at 835 n.35.

12. The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for

the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding. Since he exercised "sound discretion" in handling the sensitive problem of possible juror bias created by the improper comment of defense counsel, the mistrial order is supported by the "high degree" of necessity which is required in a case of this kind. Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, "the public's interest in fair trials designed to end in just judgements [sic]" must prevail over the defendant's "valued right" to have his trial concluded before the first jury impaneled.
434 U.S. at 515–16, 98 S.Ct. 824, 835–836 (footnotes omitted).

tage," [13] for it could reconstruct its case as to the 1970 tax evasion without the tainted Harris testimony or drop the 1970 count and seek convictions only for the years 1969 and 1971. But the defendant should at least be comforted by the Government's representation that it will not use that testimony, see note 9 supra. And although the trial judge did proceed without apparently affording either counsel opportunity to state his position on the propriety of the declaration, compare Arizona, 434 U.S. at 514 n.34, 515–16, 98 S.Ct. 824, he did so only after hearing two days of testimony from ten witnesses outside the presence of the jury, 413 F.Supp. at 168.

The Court in Arizona also placed some emphasis on the impropriety of defense counsel's conduct in concluding that the mistrial declaration should be accorded special deference,[14] while here no such impropriety was found.[15] Finally, we note that the mistrial in Arizona was declared only two days after the start of the trial, not, as here, at its very end, after the prosecutor had rested his case.[16] Insofar as Arizona permits us to weigh the burden of a particular trial upon the defendant in balancing double jeopardy interests, see 434 U.S. at 503–06, 514, 98 S.Ct. 824, Scott, supra, 437 U.S. at 92, 98 S.Ct. at 2194, the belated interruption of the proceedings here is a factor weighing slightly against the trial judge's ultimate conclusion.

---

**13.** 413 F.Supp. at 172.

**14.** "Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases."
434 U.S. at 513, 98 S.Ct. at 834.

**15.** Judge Timbers characterized as "negligent" defense counsel's failure to examine his firm's own records which would have disclosed the recanting witness's prior statement to an associate that his grand jury testimony had been false, and Judge Timbers viewed this negligence as the cause of the prejudicial situation. 552 F.2d at 55. Although this conduct convinced Judge Timbers that there was "implied consent" to the mistrial, it did not have a prejudicial impact on the jury, unlike the defense counsel's improper conduct in Arizona. Thus the "improprieties" in the two cases cannot be treated similarly.

"Difficult is the answer to the question" of when double jeopardy bars a retrial after a judge abuses his discretion in granting a mistrial, Congressional Research Service, Library of Congress, The Constitution of the United States of America: Analysis and Interpretation 1096 (1973). On balance, despite some doubt about whether the mistrial declaration was strictly necessary here, we conclude that the "special respect" that Arizona requires us to accord the trial judge's decision warrants upholding that decision, particularly in view of the evidence that the recantation may have been retracted. Thus we cannot adhere to our prior holding affirming the judgment of the district court.

Judgment reversed; cause remanded for a new trial. Mandate to issue forthwith.

TIMBERS, Circuit Judge, concurring specially:

I concur in the result reached by the majority on remand from the Supreme Court, namely, reversal of the judgment of the District Court for the District of Connecticut (Zampano, J.) which had held that retrial of Grasso was barred by the double jeopardy clause, and remand to the District Court with instructions that retrial of Grasso is not barred by double jeopardy.

The order of the Supreme Court of June 26, 1978, 438 U.S. 901,[1] which vacated our prior judgment, 552 F.2d 46, in my view

---

**16.** See Schulhofer, Jeopardy and Mistrial, 125 U.Pa.L.Rev. 449, 510–11, 514 (1977), suggesting that after the close of the prosecutor's case in chief, the threat to double jeopardy interests is particularly acute, and "stringent" limitations upon mistrial are appropriate.

**1.** The Supreme Court's order, 438 U.S. 901 (1978), which vacated our prior judgment, is as follows:

"No. 76–1543. United States v. Grasso. C.A.2d Cir. Motion of respondent for leave to proceed in forma pauperis and certiorari granted. Judgment vacated and case remanded for further consideration in light of United States v. Scott, 437 U.S. 82 (1978), and Arizona v. Washington, 434 U.S. 497 (1978). Reported below: 552 F.2d 46."

virtually mandated the result we have now reached, as stated above.

The Supreme Court last Term made it very clear that among the double jeopardy issues it determined were (1) that a defendant who, "by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused," *United States v. Scott*, 437 U.S. 82, 98–99 (1978), may not avail himself of a double jeopardy claim against retrial; and (2) that the absence of an "explicit finding of 'manifest necessity' " and the failure of the trial judge to explore alternatives to a mistrial do not bar retrial of the defendant on the ground of double jeopardy. *Arizona v. Washington*, 434 U.S. 497, 516–17 (1978). The Court's order of June 26, 1978, note 1, *supra*, vacating our judgment, expressly directed us to reconsider our prior decision in the light of *Scott* and *Arizona*.[2]

The bed-rock of the majority's prior opinion was its holding that "when a trial ends in a mistrial without any findings having been made as to alternatives to mistrial, the double jeopardy clause will usually bar a retrial of the defendant." 552 F.2d at 53. The majority today correctly acknowledges that the *Arizona* court held that findings and exploration of alternatives are not required. It follows that the majority's prior reading of the plurality opinion in *United States v. Jorn*, 400 U.S. 470, 485 (1971), also heavily relied upon, 552 F.2d at 52, was erroneous.

*Arizona* also held that in the area between the extreme cases "in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence," where the strictest scrutiny is demanded in the discharge of a hung jury, and where "great deference" must be accorded to the trial judge, a declaration of a mistrial in a case like this "is entitled to special respect." The Court illuminated what this meant by saying that the test is whether the trial judge acted "irrationally and irresponsibly." The majority today correctly concedes, as it must, that Judge Clarie did not do this.[3]

Perhaps the chief factor in the instant case which in my view compels reversal of the District Court's double jeopardy holding in the light of *Arizona* is the retraction of the recantation by the government witness Harris. 552 F.2d at 55. Less than two hours after his recantation to defense counsel, Harris told Special Agents of the Intelligence Division of the Internal Revenue Service that this was a lie which had been induced by threats. If the defense had been allowed to recall Harris for further cross-examination and to introduce evidence of his recantation, the government of course would have been permitted to offer this evidence—with devastating impact on the defense. Judge Clarie must have had this in mind when he said that Grasso could not "get a fair and impartial trial under the present circumstances." Everyone agreed with this conclusion. No one, including Grasso's experienced counsel, wanted the trial to proceed. In this respect the instant

---

**2.** It is well settled that where, as here, the Supreme Court vacates a judgment of our Court and directs us to reconsider our decision in the light of an intervening decision of the Supreme Court, the Supreme Court *is acting on the merits.* As recently as November 13, 1978, we were reminded of this by Mr. Justice Stevens, joined by Justices Brennan, Stewart and Marshall:

> "*Whenever this Court grants certiorari and vacates a Court of Appeals judgment in order to allow that court to reconsider its decision in the light of an intervening decision of this Court, the Court is acting on the merits.* Such action always imposes an additional burden on Circuit Judges who—more than any other segment of the Federal Judiciary— are struggling desperately to keep afloat in

the flood of federal litigation. For that reason, *such action should not be taken unless the intervening decision has shed new light on the law which, if it had been available at the time of the Court of Appeals' decision, might have led to a different result.*" *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25–26, (1978) (Stevens, J., dissenting) (emphasis added).

**3.** Unfortunately, however, the majority does not stop with that concession. It engages in an interpretation of *Arizona* which I think is unnecessary and possibly incorrect, referring to the last two sentences of the majority's footnote 10. I do not agree with that interpretation of *Arizona*.

case is stronger for the government than was *Arizona.* The majority today correctly recognizes the critical impact of the evidence of the retraction of the recantation.[4]

For the reasons stated above, as well as those expressed in my previous opinions in this case, 552 F.2d at 54 and 568 F.2d 899, I concur in the result reached by the majority, thus clearing the decks for retrial of Grasso on the federal income tax evasion charges which have never been determined by a jury.

4. Here again, however, I am unable to agree with the majority's imposing as a condition upon the government's right to retry Grasso its willingness not to call Harris as a witness at the retrial, majority footnote 10, despite the government's representation that it has no present intention of using Harris at the retrial. It seems to me that, in ruling on a double jeopardy legal issue pursuant to a Supreme Court remand, we should limit ourselves to that function, leaving the record to speak for itself.