**UNITED STATES of America, Appellee,**

v.

**Sylvio J. GRASSO, Appellant.**

**No. 989, Docket 79–1476.**

United States Court of Appeals,
Second Circuit.

Argued April 21, 1980.
Decided July 29, 1980.

---

Henry B. Rothblatt, New York City, for appellant.

Michael Hartmere, Asst. U. S. Atty., D. Connecticut, New Haven, Conn. (Richard Blumenthal, U. S. Atty., District of Connecticut, New Haven, Conn., David H. Beitz, Dept. of Justice, Washington, D. C.), for appellee.

Before KAUFMAN, OAKES, Circuit Judges, and WILL, District Judge.*

PER CURIAM.

This is an appeal from a judgment of conviction entered November 30, 1979 after a bench trial by Judge Daly of the District of Connecticut. A brief history of the case may be helpful. The defendant was first indicted in April 1975 on three counts of alleged tax evasion under 26 U.S.C. § 7201 for the years 1969, 1970 and 1971. A jury trial which commenced November 5, 1975 before Judge Clarie ended in a mistrial declared sua sponte by the court following a key government witness' recantation of his testimony. The case was then reassigned to Judge Zampano, the defendant moved to dismiss the indictment on grounds of double jeopardy, the motion was granted, and the indictment dismissed. 413 F.Supp. 166 (D.Conn.1976).

* United States Senior Judge, United States District Court for the Northern District of Illinois, sitting by designation.

The government appealed and this Court affirmed. 552 F.2d 46 (2d Cir. 1977). An en banc rehearing petition was denied. 568 F.2d 899 (2d Cir. 1977). The government's petition for certiorari was granted, the judgment vacated and the case remanded in light of *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) and *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978). Thereafter, this Court reversed the judgment of the district court and remanded the case for a new trial. 600 F.2d 342 (2d Cir. 1979).

A jury trial was waived and, on the government's motion, count one of the indictment was dismissed. After trial, in which the parties stipulated that all of the evidence in the 1975 trial would be considered by the trial judge except the testimony of three witnesses, the district court found the defendant not guilty on count two and guilty on count three. That count relates to the year 1971.

The government contended that the defendant had taxable income of $71,226 in 1971 and a tax liability of $26,338 as opposed to the $16,646 of reported taxable income and the tax paid of $3,441. At the trial, the government sought to establish that the unreported income exceeded $60,-000 through the net worth plus non-deductible expenditures method. The starting point for such a computation of taxable income is the "opening net worth" at the beginning of the tax year or sequence of tax years. As the government concedes, the most difficult item of opening net worth to establish is customarily "cash on hand". In the instant case, the government used a starting date of December 31, 1968 since it originally charged Mr. Grasso with tax evasion in 1969, 1970 and 1971. In its net worth calculations, the government assumed cash on hand at that date of $200 based on an answer Mr. Grasso had given to a question by an IRS Special Agent in 1972 as to how much cash he customarily had on hand. Mr. Grasso explained at trial that he understood the agent to be asking how much cash he kept on his person and not how much cash he had available on that date.

He contended at the trial that the government's 12/31/68 computation of his net worth which totalled $129,000 was inaccurate since it omitted substantial assets including $20,800 in personal savings which his wife and he had, as well as a reserve of $23,950 for bond forfeitures that he kept in cash. He therefore contended that the opening net worth should have been $185,-781 or some $57,000 more than that calculated by the government. Since the subsequent year-end and beginning of the year net worth calculations all depend on the accuracy of the initial year's opening net worth, this represents a substantial disagreement in the net worth calculations for the year 1971.

In a criminal tax case, the government has the burden of establishing three essential elements: (1) that an additional tax was in fact due and owing by the taxpayer, (2) that he knowingly and wilfully failed to pay the same, and (3) that he did so in an attempt to evade or defeat the tax. When the government seeks to prove by the net worth method that an additional tax was in fact due and owing, it must prove the following facts: (1) a reasonably accurate opening net worth and closing net worth for the year in question, (2) an increase in net worth in the taxable year comparable to the allegedly unreported income, including an allocation of any increase in net worth or receipt of income over a period of years to establish that it is properly allocable to the year in question, (3) evidence of a "likely source" of income or the negation of any possible non-taxable source, (4) differentiation between the husband's and wife's assets, income and expenditures sufficient to justify the inference that the defendant supplied the funds for expenditures by the wife, and (5) exhaustion by the government of all "leads" provided by the taxpayer suggesting relevant information with respect to any of the foregoing.

Judge Daly carefully analyzed the net worth calculations made by the government's expert and the defendant's accountant. He concluded that, with certain minor exceptions, the government's figures, including the $200 cash on hand which the government assumed represented the opening and closing cash on hand in each of the years 1969, 1970 and 1971 were correct and that, therefore, the defendant's net worth increased by more than $60,000 in 1971.

■ Accepting the accuracy of the government accountant's calculations, however, does not satisfy the government's burden of proof. Either a "likely source" of the illegally unreported income represented by the calculated increase in net worth plus non-deductible expenditures in the year in question must be shown or all possible sources of non-taxable income must be negated. *United States v. Massei*, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958); *United States v. Bianco*, 534 F.2d 501 (2d Cir. 1976). Moreover, all leads as to sources and amounts of income, taxable and non-taxable, must be exhausted. *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ In the instant case, the government, while accepting the taxpayer's stated sources of income and suggesting them as the possible sources of the allegedly unreported income, apparently made no effort to ascertain whether the amounts he reported as having received from those sources were understated. His income from the Wigwam Restaurant, playing part-time with the Al Jarvis band, the bonding business, his investments, and income earned by his wife, all were subject to verification. He apparently kept meticulous records for his bonding business and, if he had issued a substantial number of bonds not reflected in his books, this could easily have been detected by reference to public records of the bonds he posted or to the records of the bonding company which he represented. The suggestion that his reported sources of income were the likely sources of his more than $60,000 in unreported income without verification is inconsistent with the requirements of *Massei* and *Holland* that the government in a net worth case must verify the available facts and leads either to show a likely source or negate alternative sources. We are aware that internal revenue agents checked banks and brokerage houses, examined various financial statements and transactions and conducted hundreds of interviews. When their efforts were concluded, however, they had no factual basis for identifying a "likely source" of the allegedly unreported income and contend only that the sources of income he reported on his 1971 return were also the sources of the more than $60,000 in allegedly unreported income. The record contains no justification for this conclusion and it is inherently implausible.

■ We recognize that convictions under the net worth method of computation may stand absent specific proof of a likely source of the unreported income so long as all alternative possible non-taxable sources are negated. *United States v. Massei, supra; United States v. Bianco, supra*. But while specific proof of a likely source is not necessary, given the uncertainties inherent in the net worth method of proof, a conviction based on sources suggested but not verified by the government (although apparently verifiable) and which are not even plausible much less proved hardly establishes guilt beyond a reasonable doubt. On the contrary, it indicates that the government has failed to establish an essential element of its case.

Under the circumstances, the judgment of conviction must be reversed.