WILLIAM A. GOICHMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goichman v. Commissioner
Docket No. 10042-83.
United States Tax Court
T.C. Memo 1987-489; 1987 Tax Ct. Memo LEXIS 485; 54 T.C.M. (CCH) 679; T.C.M. (RIA) 87489; September 28, 1987. *485 Petitioner was convicted of violating I.R.C. section 7201 for the taxable years 1968 and 1969. In April 1983, respondent issued a notice of deficiency determining deficiencies and additions to tax for fraud under I.R.C. section 6653(b) for the years 1967, 1968 and 1969. Held, respondent met his burden of proving fraud by clear and convincing evidence for the taxable year 1967. Held further, petitioner's criminal conviction collaterally estops him from denying fraud for the taxable years 1968 and 1969. Held further, the statute of limitations does not bar the assessment and collection of deficiencies and additions to tax for the years 1967, 1968 and 1969. Held further, under the facts of this case respondent's delay in issuing the notice of deficiency does not constitute a denial of petitioner's due process rights. Riland v. Commissioner,79 T.C. 185 (1982). William A. Goichman, pro se. Steven M. Roth, for the respondent. NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Section 6653(b) [1] *486 1967
$ 50,546.24
$ 25,273.12
1968
46,413.48
23,206.74
1969
57,476.80
28,738.40 The issues for decision are (1) whether the assessment and collection of any taxes and additions to tax for each of the years 1967, 1968 and 1969 are barred by the statute of limitations; (2) whether petitioner is liable for the addition to tax under section 6653(b) for each of the years in issue; [2] *487 (3) whether petitioner understated his taxable income for each of the years in issue in the amounts determined by respondent in accordance with the net worth method of reconstructing income; and (4) whether respondent's delay in issuing the statutory notice of deficiency constitutes a denial of petitioner's due process rights. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner resided in Los Angeles, California, at the time the petition in this case was filed. Petitioner and his then wife, Beverly Goichman (Beverly) filed joint Federal income tax returns for the 1967, 1968 and 1969 taxable years. Petitioner and Beverly reported taxable income of $ 19,405.61 in 1967, $ 27,791.17 in 1968 and $ 17,895.70 in 1969. His occupation was listed as attorney on the returns, and her occupation was housewife. Petitioner graduated from the University of Pennsylvania Law School in 1955. After graduation from law school, petitioner worked in the District Attorney's office of the City of Philadelphia. From April, 1956 to June, 1957, petitioner clerked with the Court of Common Pleas of Philadelphia County. He was appointed to the Pennsylvania Public Utility Commission in December, *488 1957. In 1957, he became a law partner of Max Daroff. From June, 1958 to March, 1960, petitioner and Martin M. Krimsky were law partners. Irwin N. Rosenzweig joined the law practice of petitioner and Krimsky in March, 1960. In 1963, petitioner left the partnership, and he became a sole practitioner. Petitioner's income tax return for 1964 lists a loss of $ 3,200 from the partnership of petitioner and Arnold Warren. The record does not indicate the nature of the partnership or the beginning and ending dates of the partnership. Simon Levine, a certified public accountant, prepared the tax returns for the years 1960 through 1963 of the law partnership of petitioner, Krimsky and Rosenzweig. He also prepared the individual tax returns of petitioner and Beverly for the years 1961 and 1962. Levine prepared the individual returns based on the information provided by petitioner. Levine stated that the partnership returns would have shown how much income was distributable or taxable to each partner. At the time of this trial he no longer had copies of the partnership returns that he prepared. He was not contacted by the Internal Revenue Service (IRS) in 1971 or 1972; however, the *489 partnership returns probably would have been disposed of by then. Leonard Michaels, a certified public accountant, prepared the tax returns of petitioner and Beverly for the years 1966 through 1969 and the return of petitioner for 1970. During the years in question petitioner had two bank accounts: (1) a personal account; and (2) a trust account for his law practice, which Michaels took into account in preparing the returns. Petitioner would transfer fee income from the trust account to the personal account as cases were settled, and the total of the deposits in the personal account would equal petitioner's gross fee income. The gross receipts reported on petitioner's tax returns were based solely on the personal account deposits. Petitioner represented Richard Schleinkofer, Raymond Keilman and Edward Flaxman in their separate personal injury lawsuits. [3] *491 Schleinkofer settled a negligence lawsuit against Keystone Insurance Company for $ 1,000. The settlement check, dated December 20, 1967, was payable to petitioner and Richard and Germaine Schleinkofer. Schleinkofer and his wife signed the settlement check and then received a check for $ 600 from petitioner. Petitioner endorsed *490 the check making it payable to Goodbody and Company for payment into his brokerage account. Keilman settled for $ 2,250 a personal injury lawsuit involving Harleysville Insurance Company. The settlement check, dated December 17, 1967, was payable to petitioner and Keilman. Keilman signed the settlement check and received a check for less than $ 2,000 from petitioner. Petitioner endorsed the settlement check making it payable to Goodbody and Company. Flaxman settled a lawsuit involving Nationwide Mutual Insurance Company for $ 1,200. The settlement check, dated September 6, 1967, was payable to petitioner and Flaxman. Flaxman signed the settlement check and then received either cash or a check for his share of the settlement. Petitioner endorsed the settlement check making it payable to Goodbody and Company for payment into his brokerage account. Petitioner and Beverly were married in 1956, separated in 1969 and divorced in 1973. They are the parents of three children: Jeffrey, born on August 13, 1957, Gail, born on November 27, 1959, and Daniel, born on August 31, 1962. Beverly, who has a Bachelor of Science in Education degree, was a substitute teacher two or three times a week in 1957, but she did not teach after her oldest son was born in August, 1957. She also worked taking baby pictures at a department store before the birth of her oldest son. She sold cosmetics after the birth of her first child in August, 1957, and before the birth of her second child in November, 1959. She earned $ 50 per week as a cosmetics salesperson. In 1964, Beverly was a partner in a partnership that operated a thrift shop called the "Like New Shop." In 1964 joint income tax return of petitioner and Beverly reported her share of the partnership income as $ 883.50. *492 She used her share of the partnership income to purchase a fur coat. She eventually gave her share of the partnership to the other woman with whom she worked. Beverly and petitioner received wedding gifts with a total value of $ 5,000 to $ 10,000. They received gifts from family members on special occasions. During the marriage of Beverly and petitioner, Beverly's father kept $ 5,000 to $ 6,000 for her; however, the money was sent back and forth between her and her father. Petitioner was the source of funds for household expenses, expenses of the children and charge account and mortgage payments. Petitioner provided the funds for the bank accounts and the stock purchases. OPINION On September 18, 1974, petitioner was indicted [4] for willfully and knowingly attempting to evade taxes in the taxable years 1968 and 1969 in violation of section 7201. [5] After a jury trial in the United States District Court for the Eastern District of Pennsylvania, petitioner was found guilty of violating section 7201 for 1968 and 1969. On October 29, 1975, petitioner filed post-trial motions for judgment of acquittal and for new trial. Petitioner's post-trial motions were denied on January 20, 1976. *493 The judgment was affirmed by the United States Court of Appeals for the Third Circuit on November 22, 1976. United States v. Goichman,547 F.2d 778 (3d Cir. 1976), affg. 407 F.Supp. 980 (E.D. Pa. 1976). At a hearing on February 20, 1986, respondent's counsel attempted to explain why respondent did not issue a notice of deficiency to petitioner until April, 1983. Counsel stated that on January 31, 1978, petitioner advised the Philadelphia, Pennsylvania, district of the IRS that he was residing in Los Angeles, California, and that he would like his case, which involved the years 1967 through 1970, *494 to be transferred from Philadelphia to Los Angeles. Counsel also stated that petitioner's case proceeded through IRS channels until 1980 after petitioner refused to agree to respondent's revenue agent's report in mid-1978. He stated that petitioner's case went to District Counsel in 1980, but that District Counsel would not approve the issuance of the notice of deficiency without reviewing the documents from petitioner's criminal tax case, and such documents were in the possession of the U.S. Attorney's office in Philadelphia. After receipt of the documents from petitioner's criminal case, the District Counsel in 1982 approved the issuance of the notice of deficiency. On April 15, 1983, respondent issued a statutory notice of deficiency to petitioner and Beverly. [6] *495 Respondent determined deficiencies in petitioner's income and additions to tax for fraud for the taxable years 1967, 1968 and 1969. Petitioner has the burden of showing that respondent's deficiency determinations are incorrect. Respondent, however, has the burden of establishing by clear and convincing evidence the elements of fraud for the addition to tax under section 6653(b). Section 7454; Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Castillo v. Commissioner,84 T.C. 405, 409 (1985). The existence of fraud is a question of fact to be determined upon consideration of the entire record. *496 Kotmair v. Commissioner,86 T.C. 1253, 1259 (1986). Fraud is never presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may be inferred from circumstantial evidence. Spies v. United States,317 U.S. 492, 499 (1943). The taxpayer's entire course of conduct may establish the necessary fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Respondent must prove fraud in each of the years in issue. Drieborg v. Commissioner,225 F.2d 216, 220 (6th Cir. 1955), affg. in part and revg. a Memorandum Opinion of this Court. A mere understatement of income does not establish fraud. However, a pattern of consistent underreporting of income for a number of years is strong evidence of fraud. Estate of Mazzoni v. Commissioner,451 F.2d 197, 202 (3d Cir. 1971), affg. a Memorandum Opinion of this Court; Otsuki v. Commissioner,53 T.C. at 106. In the instant case, respondent must also prove that petitioner's returns were false or fraudulent with the intent to evade tax so that the deficiencies and additions to tax may be assessed at any time under section 6501(c)(1). See section 6501(a).[7] *498 The elements of fraud under *497 section 6501(c)(1) to lift the statute of limitations bar are essentially the same as the elements of fraud for imposition of the additions to tax under section 6653(b). Estate of Temple v. Commissioner,67 T.C. 143, 159-160 (1976); McGee v. Commissioner,61 T.C. 249, 256-257, 261 (1973), affd. 519 F.2d 1121 (5th Cir. 1975); Amos v. Commissioner,43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). See Brunswick Hospital Center, Inc. v. Commissioner,T.C. Memo. 1987-253; Cox v. Commissioner,T.C. Memo 1985-324. The elements of fraud are (1) an underpayment of tax; and (2) that some part of the underpayment of tax was due to fraud. Hebrank v. Commissioner,81 T.C. 640, 642 (1983). We will address the issue of whether respondent met his burden of proving fraud in each of the taxable years 1967, 1968 and 1969. If so, we will then address the issue of whether petitioner proved that respondent's deficiency determinations are incorrect. Fraud in Taxable Year 1967
In April, 1983, respondent issued a notice of deficiency determining deficiencies and additions to tax for the taxable year 1967 in addition to the years 1968 and 1969. Respondent must meet his burden of proving fruad in order to lift the statute of limitations bar with respect to 1967. Respondent must prove each element of fraud by clear and convincing evidence. Respondent argues that the year 1967 is the first year of a three-period in which petitioner substantially underreported his taxable income. Respondent used the net worth method in determining that petitioner underreported his taxable *499 income and thus underpaid income tax in the taxable year 1967 in addition to the years 1968 and 1969. The net worth method of reconstructing income is not a method of accounting. Holland v. United States,34 U.S. 121, 133 (1954). Rather, the net worth method is directed toward establishing indirect or circumstantial evidence of taxable income by revealing increases in net worth which cannot be accounted for except as unreported taxable income on the taxpayer's return. United States v. Greene,698 F.2d 1364, 1370 (9th Cir. 1983); United States v. Hall,650 F.2d 994, 996 n.3 (9th Cir. 1981). The use of the net worth method is not confined to situations where the taxpayer has no books and records or where his books are inadequate. Holland v. United States, 348 U.S. at 133; Davis v. Commissioner,239 F.2d 187 (7th Cir. 1956), affg. a Memorandum Opinion of this Court. See Hanna v. Commissioner,T.C. Memo. 1976-32. Under the net worth method, respondent must establish with reasonable certainty an opening net worth to serve as a starting point from which to calculate future increases in the taxpayer's assets. Holland v. United States, 348 U.S. at 132. Additionally, respondent must either *500 establish the existence of a likely source of taxable income or negate all possible sources of nontaxable income. United States v. Massei,355 U.S. 595 (1958); Holland v. United States, 348 U.S. at 135-138. We find that respondent's net worth analysis, adjusted for omission of assets, establishes a pattern of substantial underreporting of income from 1967 through 1969. See detailed discussion, infra, pp.17-27. A pattern of consistent underreporting of income for a number of years is strong evidence of fraud. Estate of Mazzoni v. Commissioner,451 F.2d at 197; Otsuki v. Commissioner,53 T.C. at 106. Respondent also argues that petitioner's law practice was the likely source of his unreported income. Respondent relies on the testimony of Leonard Michaels, who prepared the tax returns of petitioner and Beverly for the years 1966 through 1969, and of Richard Schleinkofer, Raymond Keilman and Edward Flaxman, former clients of petitioner. Each of the three clients settled personal injury lawsuits in 1967; each client signed the settlement check and then received either cash or a check from petitioner representing the client's share of the settlement check. Petitioner endorsed the checks *501 payable to Goodbody and Company for payment into his brokerage account. Thus, petitioner's share of the settlement checks would not have been included in his gross income because Michaels determined petitioner's gross receipts solely on the deposits in his personal bank account. Accordingly, the manner in which petitioner handled settlement checks resulting from his law practice reflects an intent to conceal income. We conclude that respondent has met his burden of proving fraud by clear and convincing evidence in the taxable year 1967. Thus, the statute of limitations bar is lifted for the year 1967. Additionally, petitioner is liable for the addition to tax under section 6653(b) for the year 1967. Fraud in the Taxable Years 1968 and 1969
Petitioner was convicted of violating section 7201 in the taxable years 1968 and 1969. Respondent argues that petitioner's criminal conviction precludes him from denying fraud for purposes of the section 6653(b) addition to tax in the years 1968 and 1969. We agree with respondent. Under the doctrine of collateral estoppel, once a court of competent jurisdiction has decided an issue of fact or law necessary to its judgment, the determination *502 of such issue is conclusive in a subsequent suit on a different cause of action involving a party to the first action. Montana v. United States,440 U.S. 147 (1979); Parklane Hosiery Co. v. Shore,439 U.S. 322 (1979). The prior judgment, however, acts as collateral estoppel only as to those issues in the second suit that were actually presented and determined in the first suit and such determinations were essential to the initial judgment. Commissioner v. Sunnen,333 U.S. 591, 598 (1948); 1 Restatement, Judgments 2d, sec. 27 (1982). See Kenny v. Commissioner,T.C. Memo. 1986-371. The doctrine of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case. Allen v. McCurry,449 U.S. 90, 95 (1980). A taxpayer convicted under section 7201 is collaterally estopped from denying fraud for purposes of section 6653(b) in a civil tax case involving the same years. Gray v. Commissioner, 708 F.d 243 (6th Cir. 1983), affg. a Memorandum Opinion of this Court; Plunkett v. Commissioner,564 F.2d 299 (7th Cir. 1972), affg. a Memorandum Opinion of this Court; Moore v. United States,360 F.2d 353 (4th Cir. 1965); *503 Tomlinson v. Lefkowitz,334 F.2d 262 (5th Cir. 1964); Rodney v. Commissioner,53 T.C. 287 (1969); Arctic Ice Cream Co. v. Commissioner,43 T.C. 68 (1964); Amos v. Commissioner,43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965). See Astuto v. Commissioner,T.C. Memo. 1987-200; Buchbinder v. Commissioner,T.C. Memo. 1986-485; Poor v. Commissioner,T.C. Memo. 1984-3; Purser v. Commissioner, 1983-573. Therefore, petitioner, who was convicted of violating section 7201 in the taxable years 1968 and 1969, is liable for the addition to tax under section 6653(b) for those years. Further, the statute of limitations imposes no bar with respect to the assessment and collection of deficiencies and additions to tax for the years 1968 and 1969. Stone v. Commissioner,56 T.C. at 223. Petitioner's criminal conviction, however, does not collaterally estop him from contesting respondent's determinations of deficiencies in the taxable years 1968 and 1969. A conviction under section 7201 requires proof of an omission, not of any definite amount, of taxable income. [8] Since the determination of petitioner's tax liability was not essential to his criminal conviction under section 7201, the doctrine *504 of collateral estoppel is not applicable to either petitioner or respondent with respect to the amount of taxes due. Moore v. United States,360 F.2d at 357. See Arctic Ice Cream Co. v. Commissioner,43 T.C. at 74; Hanna v. Commissioner,T.C. Memo. 1976-32. However, the deficiencies determined by respondent are prima facie correct unless clearly shown to be erroneous. The burden of proof is upon petitioner to overcome the presumptive correctness of such deficiencies. Tunnell v. Commissioner,74 T.C. 44 (1980), affd. per curiam 663 F.2d 527 (5th Cir. 1981); Sunbrock v. Commissioner,48 T.C. 55, 63 (1967). Deficiency Determinations for the Taxable Years 1967, 1968 and 1969
Based on the net worth method of reconstructing income, respondent's calculations of petitioner's unreported income for the years in issue are stated *505 in the notice of deficiency as follows: 1966
1967
1968
1969
Assets
Cash in bank
$ 21,036.56
$ 98,205.69
$ 106,547.14
$ 117,093.06
Stocks
19,819.10
50,357.36
64,012.72
68,504.39
Investments in
--
--
24,192.00
84,313.00
partnerships
Auto
7,527.30
7,527.39
9,378.56
9,378.56
Other depreciable
8,645.22
9,295.55
9,963.16
9,963.16
property
Residence
40,000.00
40,000.00
40,000.00
40,000.00
Total Assets
97,028.27
205,385.99
254,093.58
329,252.17
Liabilities
Reserve for
depreciation-auto
2,966.05
4,291.84
2,204.34
4,288.92
Reserve for
depreciation-
other property
3,095.10
3,887.13
4,763.33
5,255.84
Margin accounts
1,054.02
1,399.79
1,627.47
3,227.38
Escrow balance
9,959.10
25,448.77
19,707.26
12,893.39
Total Liabilities
17,074.28
35,027.53
28,302.40
25,665.53
Net worth -- end of year
79,953.99
170,358.46
225,791.18
303,586.64
Less: net worth --
beginning of year
79,953.99
170,358.46
225,791.18
Increase in net worth
90,404.47
55,432.72
77,795.46
Add: net adjustments to
net worth
30,497.08
60,546.08
46,259.43
Add: business
expenses [9] claimed
on return and
not allowed
1,733.07
2,592.42
4,615.34
Less: deductible
payment to HR 10
--
2,500.00
2,500.00
Adjusted gross income
122,634.62
116,071.22
126,170.23
Less: itemized
4,183.32
4,974.20
5,650.18
deductions
Less: exemptions
3,000.00
3,000.00
3,000.00
Taxable income
115,451.30
108,097.02
117,520.05
Less: reported
19,405.61
27,791.17
17,895.70
taxable income
Unreported taxable
96,045.69
80,305.85
99,624.35
income
*506 At trial, respondent introduced the following net worth schedule, which was prepared by Agent Edward Bottoms: 1966
1967
1968
1969
Assets
Cash in bank
$ 21,036.76
$ 98,205.69
$ 106,736.18
$ 117,559.00
Stocks
19,819.10
50,357.48
64,261.06
69,491.09
Investments in
--
--
24,192.00
84,313.00
partnerships
Auto
7,527.39
7,527.39
4,561.33
4,561.33
Other depreciable
8,645.22
9,295.55
9,963.16
9,963.16
property
Residence
40,757.58
40,757.58
40,757.58
40,757.58
Total Assets
97,786.05
206,143.69
250,471.31
[10] 326,645.16
Liabilities
Accumulated
depreciation-auto
2,966.06
2,966.06
413.58
634.16
Accumulated
depreciation-
other property
3,095.10
3,887.13
4,763.33
5,255.34
Margin accounts
1,054.02
1,399.79
1,627.47
3,227.38
Escrow balance
9,955.10
25,448.77
19,707.26
12,893.89
Total Liabilities
17,070.28
33,701.75
26,511.64
22,010.77
Net worth -- end
80,715.77
172,441.94
223,959.67
304,634.39
of year
Less: net worth --
beginning of year
80,715.77
172,441.94
223,959.67
Increase in net worth
91,726.17
51,517.73
80,674.72
Add: adjustments to
net worth
Federal tax payments
2,258.90
4,786.37
8,603.67
Itemized deductions
4,698.30
5,800.06
6,385.60
per return
Payment to
self-employment
retirement plan
--
2,500.00
2,500.00
Personal expenses
18,085.00
18,385.00
27,547.72
Nondeductible
medical
expenses per return
813.12
1,097.74
818.44
Gift: Revere Fund
--
26,387.52
--
to children
25,855.32
58,956.69
45,855.43
Less: adjustments to
net worth
Dividend exclusion
200.00
200.00
200.00
Section 1202
deduction
per return
329.11
1,641.98
1,495.42
Section 1202
deduction on
nonreported
stocks sales
and capital gains
distribution
723.03
871.71
478.67
1,252.14
2,713.69
2,174.09
Add: total
adjustments to
net worth
24,603.18
56,243.00
43,681.34
Add: business
expenses per
return --
determined not
allowable
1,325.78
2,047.75
1,864.00
Less: deductible
payments to
self-employment
retirement
plan
--
2,500.00
2,500.00
Adjusted gross income
117,655.13
107,308.48
123,720.06
Less: itemized
4,210.32
4,985.30
5,671.18
deductions
Less: exemptions
3,000.00
3,000.00
3,000.00
Taxable income
110,444.81
99,323.18
115,048.88
Less: reported
19,405.61
27,791.17
17,895.70
taxable income
Unreported taxable
91,039.20
71,532.01
97,153.18
income
*507 Petitioner alleges the following six errors with respect to respondent's net worth computations: 1. Opening Net Worth.Respondent must establish with reasonable certainty an opening net worth from which to calculate future increases in the taxpayer's assets. Holland v. United States, 348 U.S. at 132. The amount of cash on hand [11] at the beginning of the years in issue must be established with reasonable certainty. United States v. Terrell,754 F.2d 1139, 1146 (5th Cir. 1985). In the instant case, respondent began his investigation of petitioner's financial history with the year 1955 and, alternatively, the year 1963 to prove petitioner's net worth as of December 31, 1966, and, thus, disprove the existence of a cash hoard. With respect to the year 1955, respondent relied on petitioner's testimony in a 1970 support hearing that his assets upon graduation from law school in 1955 included a car and *508 some bank accounts and savings bonds and that the value of such assets was approximately $ 10,000. With respect to the year 1963, respondent relied on a mortgage application that was signed by petitioner and Beverly. [12] *509 The mortgage application listed assets of $ 19,500: $ 15,000 cash in the bank and $ 4,500 in stocks. Additionally, respondent conducted a source and application of funds analysis based on petitioner's tax returns and concluded that petitioner's expenditures equalled or exceeded available funds. [13] Petitioner argues that respondent's net worth analysis is incorrect because petitioner was not given any credit for having any cash on hand in 1966. Petitioner does not argue that he possessed a specified amount of cash on hand on December 31, 1966. In fact, *510 petitioner prepared a "net worth picture-overview" that does not include any cash on hand in the 1966 net worth. Thus, petitioner, in essence, conceded that respondent's determination of no cash on hand on December 31, 1966, is correct. Petitioner next argues that neither his testimony at the support hearing concerning his assets in 1955 nor the 1966 mortgage application is a complete description of his assets in 1955 or 1963. In support of his argument, petitioner prepared lists of the assets that he owned in 1955 and 1963. Petitioner's lists of assets are not credible; petitioner did not introduce evidence into the record that substantiates his claim of ownership or evaluation of such assets. Therefore, petitioner did not prove the incorrectness of respondent's net worth computations with respect to petitioner's assets in 1955 and 1963. 2. Investigation of Leads. Petitioner further argues that respondent failed to conduct an investigation of leads, such as the partnership interests that petitioner and Beverly held prior to the years in issue. Petitioner apparently argues that the partnership interests generated income which was expended during the years in issue. Respondent *511 has the burden to investigate leads given by the taxpayer as to nontaxable sources of income. Holland v. United States, 348 U.S. at 131, 135-136; Fairchild v. United States,240 F.2d 944, 947-948 (5th Cir. 1957). [14] *512 In Holland v. United States, 348 U.S. at 135, the Supreme Court stated: When the Government rests its case solely on the approximations and circumstantial inferences or a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer -- leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence. Thus, the purpose of the lead check rule is to negate possible sources of nontaxable income that explain the taxpayer's increases in net worth. Under the facts of the instant case, we find that the partnership interests that petitioner and Beverly held prior to the years in issue do not constitute "leads" within the meaning of Holland. The tax consequences of the partnership interests should be reflected in the individual income tax returns of petitioner and Beverly in the appropriate taxable years. The partnership interests should not be a source of income not reflected in the tax returns of petitioner and Beverly, which were considered in respondent's net worth analysis. Thus, the partnership interest are not leads or possible nontaxable sources of income that explain petitioner's increases in net worth during the years in issue. 3. Likely Source of Income.Petitioner argues that respondent did not prove a likely source of petitioner's unreported income. Based on United States v. Grasso,629 F.2d 805 (2d Cir. 1980), *513 petitioner argues that respondent erroneously failed to prove that petitioner's law practice generated the amount of unreported income determined by respondent. In United States v. Grasso,629 F.2d at 808, which involved a conviction under section 7201 based on the net worth method, the court of appeals found that the government's suggestion that the taxpayer's reported sources of income were the likely sources of his unreported income without verification is inconsistent with the requirements of United States v. Massei,355 U.S. at 595, and Holland v. United States,348 U.S. at 135-138, that in a net worth case the government must either show a likely source or negate alternate sources of nontaxable income. The instant case is factually distinguishable from Grasso. Petitioner's income tax returns for the year in issue list his law practice as a source of income. Respondent accepted petitioner's law practice as a possible source of unreported income. In contrast to the Grasso case, respondent's extensive investigation of petitioner's financial history revealed information that petitioner understated the amount of income from his law practice. Specifically, respondent obtained evidence *514 concerning the manner in which petitioner handled his client's settlement checks in order to conceal income from the accountant who prepared petitioner's Federal income tax returns. Thus, respondent established petitioner's law practice as a likely source of current taxable income. 4. Certificates of Deposit. Petitioner argues that he owned certificates of deposit, valued at $ 25,000, as of December 31, 1966, and that these certificates of deposit were erroneously excluded from his net worth for 1966. In support of his claim of ownership, petitioner introduced (1) a schedule entitled "History of Childrens' Assets," and (2) the deposition of an employee of the Philadelphia National Bank, at which the certificates of deposit were purchased. Both documents were introduced in an equity proceeding initiated by petitioner against Beverly in 1969. We agree with petitioner that the certificates of deposit, valued at $ 25,000, were erroneously excluded from his net worth for 1966. The documents introduced by petitioner established that he purchased in June, 1966, three savings certificates at the Philadelphia National Bank in his name for his three children for the total sum of $ 15,000 *515 and that the savings certificates were redeemed or closed in July, 1968. Petitioner also established that he purchased in November, 1966, two savings certificates at the Philadelphia National Bank in his wife's name for two of his children for the sum of $ 10,000 and that these certificates were redeemed or closed in November, 1967. 5. Escrow Accounts. Petitioner submitted two bankbooks for two accounts (account numbers 01-160316-5 and 01-166672-0) at Western Savings Bank. He argues that one account was a personal savings account and the other account was an escrow business account. We find that account number 01-166672-0 is not relevant because the bankbook indicates that the initial deposit was made on August 12, 1970, and 1970 is not a year in issue. We also find that petitioner did not present evidence establishing that account number 01-160316-5 was an escrow account. Thus, the balance of account number 01-160316-5 on December 31, 1969, which was $ 18,869.85, was properly included in petitioner's assets as of December 31, 1969. Petitioner also argues that his escrow accounts at the Philadelphia National Bank were erroneously included in his assets. Admittedly, the balances *516 of accounts at the Philadelphia National Bank were included in petitioner's assets. However, the balances of the escrow accounts (numbers 124-5683 and 141-8273) were listed as liabilities. Thus, respondent's treatment of petitioner's escrow accounts at the Philadelphia National Bank was not erroneous. 6. Net Worth Study of Wife. Petitioner argues that respondent erroneously failed to conduct a net worth study of Beverly. Petitioner relies upon United States v. Meriwether,440 F.2d 753 (5th Cir. 1971), in which the court of appeals reversed the taxpayer's conviction of willfully attempting to evade and defeat payment of Federal income tax by filing false and fraudulent joint income tax returns because, inter alia, the government, in establishing its net worth theory, did not establish with reasonable certainty a definite opening net worth of the joint income of taxpayer and his spouse. In the instant case, petitioner and Beverly, by filing joint income tax returns for the years 1967, 1968 and 1969, are jointly and severally liable for the tax for those years under section 6013(d)(3). Respondent issued a joint notice of deficiency. Under these circumstances, respondent was required *517 to establish a joint net worth of petitioner and Beverly in order to determine their joint tax liability. In fact, respondent investigated the financial history of both petitioner and Beverly. [15] Furthermore, the evidence of record indicates that the earnings and assets of Beverly were minimal and that petitioner was the source of income for his wife and children. [16] *518 See United States v. Giacalone,574 F.2d 328, 333 (6th Cir. 1978). We have carefully considered all of petitioner's remaining arguments, and we conclude that petitioner has not shown any error, other than the omission of the certificates of deposit, in respondent's deficiency determinations based on the net worth method for the years 1967 through 1969. Accordingly, respondent's determinations, as adjusted for the erroneous exclusion of the certificates of deposit, are sustained. Respondent's Delay in Issuing a Notice of Deficiency
Petitioner argues that respondent's delay is issuing the notice of deficiency violates his due process rights. He argues that he was denied a fair trial due to the loss of records and the death of witnesses. The criminal investigation of petitioner occurred in 1972 and 1973. A report, dated March 28, 1973, recommended criminal prosecution of petitioner with respect to the taxable years 1968 and 1969. In September, 1974, petitioner was indicted for willfully and knowingly attempting to evade taxes in violation of section 7201 for the years 1968 and 1969. Following a jury *519 trial, petitioner was found guilty of violating section 7201 for the years 1968 and 1969. His conviction was affirmed by the United States Court of Appeals for the Third Circuit in November, 1976. Respondent issued the statutory notice of deficiency in April, 1983. Thus, the deficiency notice was issued approximately six and a half years after the conclusion of petitioner's criminal case. [17]
In Riland v. Commissioner,79 T.C. 185 (1982), the Court addressed the issue of whether due process under the Fifth Amendment requires respondent to issue a notice of deficiency in civil fraud cases when he has obtained the information necessary to issue such notice. [18] The Court held that the taxpayers must demonstrate actual prejudice *520 resulting from respondent's delay in issuing the notice of deficiency in order to be entitled to due process relief. Riland v. Commissioner,79 T.C. at 197. The Court then found that the taxpayers in Riland did not demonstrate actual prejudice due to the death of two proposed witnesses who would testify at the Tax Court trial during the period between Dr. Riland's criminal acquittal and the mailing of the statutory notice of deficiency. Riland v. Commission,79 T.C. at 197-198. Since the taxpayers in Riland failed to demonstrate any actual prejudice resulting from respondent's delay in issuing the notice of deficiency, the Court did not reach the issue of whether the due process clause sets any outer limit to the time in which respondent must issue a notice of deficiency determining fraud after he possesses the information necessary to issue such a notice. Riland v. Commissioner,79 T.C. at 197-198. In the instant case, we have found that the statute of limitations did not bar the assessment and collection *521 of the deficiencies and additions to tax for the taxable years 1967, 1968 and 1969 because (1) respondent met his burden of proving fraud by clear and convincing evidence in the taxable year 1967; and (2) petitioner's conviction under section 7201 for the taxable years 1968 and 1969 collaterally estops him from denying fraud for those years. Once respondent meets his burden of proving fraud and thus lifts the statute of limitations bar, petitioner has the burden of overcoming the presumptive correctness of respondent's deficiency determinations. Petitioner did not establish how he was unable to prove the incorrectness of respondent's deficiency determinations due to the destruction of financial records, the death of witnesses or other obstacles presented by the passage of time. [19] *522 Accordingly, petitioner did not demonstrate actual prejudice resulting from respondent's delay in issuing the statutory notice of deficiency. Petitioner requests that the record be reopened for introduction of addition evidence or clarification of evidence already in the record. Petitioner's request is denied because he has already been given ample opportunity to present or explain evidence. Chiquita Mining Co. v. Commissioner,148 F.2d 306, 310 (9th Cir. 1945), affg. a Memorandum Opinion of this Court. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Except as otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure. 2. Section 6653(b), in effect for the years in issue, read as follows: (b) FRAUD. -- If any part of any underpayment (as defined in subsection (c) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013↩, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. 3. Schleinkofer, Keilman and Flaxman testified at petitioner's criminal tax trial but not at the hearing before this Court. Petitioner agreed to the admissibility of the testimony at the criminal trial provided that respondent submitted proofs of service of subpoenas to Schleinkofer, Keilman and Flaxman. Proof of service of Keilman was admitted into the record, and the record was held open for submission of proofs of service of Schleinkofer and Flaxman. Such proofs of service were submitted. Accordingly, the testimony of Schleinkofer, Keilman and Flaxman at petitioner's criminal trial is admitted herein. 4. Beverly Goichman was not a party to the criminal case. Amended section 7201↩ is applicable to offenses committed after September 3, 1982. 5. Prior to amendment by section 329 of Pub. L. 97-248, 96 Stat. 324, 618, section 7201 provided as follows: Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $ 10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.↩
6. Petitioner and Beverly filed joint income tax returns for the years in issue, and respondent issued a joint notice of deficiency. The notice of deficiency states that a duplicate original of the deficiency notice was sent to each spouse in accordance with section 6212(b)(2). In his opening brief, petitioner contends that Beverly did not receive a copy of the deficiency notice. Only petitioner filed a petition before the Court. Beverly did not file a petition on her own behalf, either separately or jointly with petitioner. Thus, the Court has not acquired jurisdiction as to Beverly. Rule 34(a); United States v. Jenkins,780 F.2d 518 (5th Cir. 1986). See Davenport v. Commissioner,48 T.C. 921↩ (1967). Accordingly, we will not address issues raised by petitioner on behalf of his nonpetitioning ex-wife. 7. Section 6501(a)provides as follows: (a) GENERAL RULE. -- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. Section 6501(c)(1)reads as follows: (1) FALSE RETURN. -- In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. ↩
8. In order to sustain a conviction for violation of section 7201, the Government must prove the following three elements: (1) the existence of a tax deficiency; (2) willfulness; and (3) some affirmative act constituting an evasion or an attempted evasion of income taxes. Sansone v. United States,380 U.S. 343, 351 (1965); Holland v. United States,34 U.S. 121↩ (1954). 9. In his opening brief, respondent concedes the adjustments for automobile expenses for the years 1967, 1968 and 1969, respectively. Respondent also concedes the adjustment for promotional expense for the year 1969. ↩
10. We note that the "computation of increase in net worth" page of respondent's net worth schedule incorrectly lists petitioner's assets in 1969 as $ 326,646.16, instead of $ 326,645.16. ↩
11. The term cash on hand is defined as the amount of cash not deposited in petitioner's bank accounts. ↩
12. At trial, petitioner objected to the admission of the copy of the Application for Mortgage Loan, dated August 30, 1963, with respect to property at 1080 Sparrow Road, Jenkintown, Pennsylvania. In his opening brief, petitioner states that the Court conditionally admitted into the record the copy of the mortgage application and allowed the parties to argue its propriety on brief. Petitioner's statement is incorrect. The Court rules that the copy of the mortgage application was admissible under Rule 1003 of the Federal Rules of Evidence. See Rule 143(a). The Court stated that the completeness of the mortgage application affected the weight to be accorded the application but not its admissibility. The Court also stated that petitioner could argue on brief that the mortgage application did not include all of his assets on the date on which the application was signed. After review of petitioner's brief and the evidence of record, the Court concludes that petitioner presented no credible argument or evidence establishing that the mortgage application was not a complete list of his assets on the date on which it was signed. 13. Petitioner's Federal income tax returns for the taxable years 1955 through 1959 were not available. Thus, respondent assumed that petitioner's income for each of the four years equaled his income for 1960. Petitioner's Federal income tax return for 1960 was not admitted into the record; however, petitioner stipulated to the amount of his adjusted gross income in 1960. The record includes petitioner's Federal income tax returns for the taxable years 1961 through 1969. ↩
14. The lead-check rule was set forth in Holland v. United States,348 U.S. 121, 135-136 (1954), which was a criminal tax tax. The rule was applied to civil tax fraud cases in Fairchild v. United States,240 F.2d 944, 948 (5th Cir. 1957). The Tax Court has held that the lead-check rule is not applicable to civil tax fraud cases in which the taxpayer is collaterally estopped to deny fraud because of his criminal conviction of violating section 7201and the taxpayer has the burden of proving the absence of a deficiency in tax. Tunnell v. Commissioner,74 T.C. 44, 57 (1980), affd. per curiam 663 F.2d 527↩ (5th Cir. 1981).
15. In support of his argument that respondent did not conduct a net worth study of Beverly, petitioner relies on the testimony of Gerald Smith, the investigating special agent who recommended criminal prosecution of petitioner. Petitioner misconstrued Smith's testimony. Smith testified that he probably would not do a separate net worth study of Beverly, but that he would do a joint net worth study of petitioner and Beverly because they filed joint returns. Thus, Smith's testimony does not establish that respondent's net worth study ignored the earnings and assets of Beverly. ↩
16. Petitioner attempted to argue that he made gifts of stock or mutual funds to his children and such gifts were not properly treated by respondent in his analysis of petitioner's net worth. Petitioner did not provide a coherent factual and legal basis for his argument. Thus, the Court is unable to address this argument. 17. In a letter dated January 31, 1978, petitioner advised the Philadelphia district of the IRS that he had been residing in California since 1973. He requested that his case, which involved the years 1967 through 1970, be transferred from Philadelphia to Los Angeles where "my books and records are located." Petitioner's letter clearly establishes that he was aware of potential civil tax liability with respect to the years in issue as early as January 31, 1978. ↩
18. We note that petitioner's brief does not include a discussion of Riland v. Commissioner,79 T.C. 185↩ (1982), even though the Court directed petitioner's attention to the case. 19. We note that the evidence of record does not indicate that respondent's delay in issuing the deficiency notice was due to the unacceptable purpose of gaining technical advantage over petitioner. United States v. Marion,404 U.S. 300, 324 (1971). According to respondent's counsel, the issuance of the deficiency notice was delayed after the conclusion of petitioner's criminal tax case due to petitioner's request that his case be transferred from Philadelphia to Los Angeles in January, 1978, and administrative difficulties encountered by respondent in transferring the records of petitioner's criminal case from the U.S. Attorney's office in Philadelphia to respondent's office in Los Angeles.